WEBSTER v. McFADDEN et al.

No. 29824. May 12, 1942.

*125 P. 2d 987.*

552

C. W. Myers, Robert W. Maupin, and D. A. Maupin, all of Oklahoma City, for plaintiff in error.

Baxter Taylor and J. Weldon Cornett, both of Oklahoma City, for defendants in error.

BAYLESS, J. This is an action by plaintiff, Myrtle Webster, to declare and enforce a trust in a farm in Kansas under an oral agreement, and to compel the release of a mortgage on said farm. The plaintiff and the defendants, James A. McFadden and Goldie M. Jackson, are sisters and brother. As against James A. McFadden, the plaintiff seeks to enforce a trust and as against the defendant Goldie M. Jackson she seeks cancellation of the mortgage. Both defendants were personally served with summons in Oklahoma county. Defendants demurred separately to the petition on the grounds (a) that the petition did not state facts sufficient to constitute a cause of action, (b) that the action was barred by the statute of limitations, and (c) that the oral contract out of which the alleged trust arose was invalid and unenforceable because of the statute of frauds. The trial court sustained the demurrers, the plaintiff stood on the petition, refusing to plead further, and thereupon the court entered judgment dismissing the cause. Plaintiff appeals.

The petition is quite lengthy, but in substance contains the following allegations: That the mother of the parties owned the land and executed a will devising it in equal parts to the plaintiff and to the defendant James A. McFadden; that after the death of the mother the father of the parties suppressed, lost, or destroyed the will and took possession of the land claiming to be the sole owner; that the father by fraudulent representations procured the plaintiff and James A. McFadden to execute and deliver to him a deed covering said land; that thereafter the plaintiff and James A. McFadden employed an attorney, who filed an action to cancel said deed; that said attorney advised that it would be necessary for plaintiff to testify as to transactions and communications with her mother in order to recover judgment against the father; that on the advice of the attorney, in order that she might so testify, the plaintiff renounced and disclaimed any interest in said land under the will, upon the oral promise of James A. McFadden that if he was successful in canceling the deed to the father and establishing the lost will, he would convey to the plaintiff one-half of the interest in the land which he received under the will; that the plaintiff relied upon said promise and so testified in the cause and the deed to the father was canceled; that thereafter proceedings were instituted in the probate court of Pratt county, Kan., to establish and probate the will of the mother as a lost will, and acting upon her brother's promise, she again renounced her interest in the property under the will

and became a competent witness to testify and did testify to communications and transactions with her mother in the probate court, which refused to admit the will to probate, and in the district court in an action to establish the lost will; that the district court established the will and it was thereafter admitted to probate as a lost will, and James A. McFadden was decreed a one-half interest in the land and the other one-half interest in the land was awarded to the father because of the plaintiff's renunciation of her rights under the will; that plaintiff and James A. McFadden permitted the father to remain in possession of the property for sometime thereafter, but later James A. McFadden, acting for plaintiff and himself, instituted an action for an accounting and for partition of this land, and James A. McFadden acquired the land for himself and this plaintiff through the partition proceedings, using the judgment awarded James A. McFadden for himself and this plaintiff as the purchase price of the father's interest; that plaintiff furnished one-half of the costs and expenses of all said litigation; that a fiduciary relation existed between plaintiff and James A. McFadden; that on November 29, 1938, she requested defendant to keep his promise and deed her the interest as agreed, but that defendant refused to carry out said agreement and convey to the plaintiff her interest in said land; that James A. McFadden made a mortgage to defendant Goldie M. Jackson covering said land, and that Goldie M. Jackson at the time the mortgage was taken had full knowledge of all the facts.

Plaintiff prayed that the court decree that James A. McFadden holds an undivided one-half interest in said land in trust for her, that she be decreed to be the equitable owner thereof, and that James A. McFadden be compelled to execute and deliver to the plaintiff a deed covering such interest, and that in the event it be found impossible to enforce such decree, she recover a judgment for $4,000, the value of one-half of the land. She further prayed that the one-half interest be free and clear of the mortgage to Goldie M. Jackson and that Goldie M. Jackson be required to execute and deliver to plaintiff a release of the mortgage as to her one-half interest in said land. The plaintiff also prayed that James A. McFadden be compelled to account to plaintiff for rents and profits collected from said land.

The trial court assigned no reason for sustaining the demurrer. Plaintiff argues four propositions in attempting to show that the demurrer should not have been sustained. Defendant answers these propositions generally and argues certain propositions in support of the asserted correctness of the ruling of the court sustaining the demurrer. If the demurrer was properly sustained on any ground, the judgment of the lower court must be affirmed, and it is our opinion, in view of the argument made by defendant under proposition 4, that the demurrer was properly sustained on issues of law.

Defendants assert that the allegations of the plaintiff's petition show that she practiced a fraud and a deceit upon the courts in Kansas and upon her father. Defendants point out that plaintiff admits that as matters stood before and at the time her brother instituted and prosecuted the actions in Kansas, both the brother and this plaintiff were incompetent witnesses. Without discussing the correctness of this view of their incompetency under the Kansas statutes, it is apparent under the allegations of the plaintiff's petition that she did not divest herself of any interest in the property owned by her mother at the time of the mother's death. She pleads that she renounced her right to take under the will and renounced her right to a distributive share in the estate in the event the will was held invalid by the courts of Kansas, but as a consideration for these acts of renunciation she received a contractual agreement for a share in the identical property in the event her brother was successful in setting aside the deed and establishing the will and recovering the property. In

other words, plaintiff alleges that she gave up rights in this property that had accrued to her as a devisee or heir of her mother and received in return the promise of her brother for a share in the same property if he became the owner of it.

It is therefore apparent that plaintiff was at all times interested in the recovery of this estate by her brother, and that her acts of renunciation amounted to stating to the courts of Kansas that she was a competent witness despite the statutes of Kansas touching upon her competency, when in truth and in fact she may not have been a competent witness by reason of the contract she had with her brother. We are of the opinion that this is fraud on the court as spoken of in 13 C. J. 447, § 385, 17 C.J.S. 614, § 232, and 12 Am. Jur. 689, §§ 186 and 187. See, also, Elliott on Contracts, vol. 2, p. 71, § 720, dealing with cases where it is held to be a fraud on the court for a party to conceal the party's true relations to the litigation involved. It was also a fraud on her father, as well as the court, as spoken of in Ridenbaugh v. Young, 145 Mo. 274, 46 S. W. 959.

In addition to this, defendants call our attention to the illegal purpose of the contract, that is to say, an agreement to compensate a witness on a contingent basis, and assert that the contract is unenforceable for this reason.

The general rule recognized and applied by all courts is well stated in the case of Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co., 95 Fed. 2d 978, to this effect:

"The general rule unquestionably is that a contract to give testimony for a compensation contingent on the outcome of the case is illegal."

For other cases to the same effect, see Am. Dig. (West) Contracts Key No. 129. See, also, 13 C. J. 448, § 388; 17 C.J.S. 596, § 225; 12 Am. Jur. 690, § 188; Page on The Law of Contracts, vol. 2, p. 1637, § 926, including annotations and supplements; Elliott on Contracts, vol. 2, p. 71, § 721; and annotations in 16 A.L.R. 1457, 41 A.L.R. 1322 and 45 A.L.R. 1423.

We think plaintiff has made it very clear by her pleadings that she contracted with her brother to make herself a competent witness and to testify in his behalf in his litigation for compensation on a contingent basis. Such a contract is illegal and unenforceable.

The judgment of the trial court is affirmed.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, GIBSON, and DAVISON, JJ., concur. ARNOLD, J., absent. HURST, J., dissents.